ENMANUEL v. THE PEOPLE.

Appeal from the District Court of San Juan.

No. 27.—Decided June 22, 1904.

ACTION TO RECOVER POSSESSION—WANT OF LEGAL CAPACITY.—The absence of
documents on which the plaintiff bases his right in an action to recover the
possession of property does not permit of the exception of want of legal
capacity, referred to in articles 502 and 532 of the Law of Civil Procedure,
but does permit that of *sine actione agis*, which is referred to in article 503
of the same law.

ID.—LEGATEE.—Where the plaintiff claims his rights as the legatee of a third
person, his legal capacity is established by the production of the will in
which he is designated as such and by the death certificate of the testator.

ID.—RECOGNITION OF LEGAL CAPACITY.—Where the defendant has recognized the
legal capacity of the plaintiff, he cannot afterwards validly impeach the
same.

PROPERTY RIGHTS—COURTS OF JUSTICE—DUE PROCESS OF LAW.—Questions re-
lating to the protection of private property and to the rights of the parties
in connection with the same are for the determination of courts of justice,
because no person can be deprived of his property without due process of law.

ACTION TO RECOVER POSSESSION OF PROPERTY—OWNERSHIP AND IDENTIFICATION OF
THE THING CLAIMED.—In all actions to recover the possession of property,
proof of ownership, and the identification of the thing sought to be recovered,
are indispensable requisites.

ID.—TITLE OF PROTECTION—POSSESSION.—The ownership and possession of certain
lands granted by the Spanish Government having been fully established by
the plaintiff by means of a title of protection constituting a title of owner-
ship, the validity thereof can in no wise be affected by the loss of the record
of the possession, provided there are other authentic documents which prove
the fact of such possession.

SOLEMN AND PUBLIC DOCUMENT.—A duly authenticated certificate issued by the
secretary of a municipality, who has charge of the records thereof, by order
of the alcalde, possesses the character of a formal public document.

ACTION TO RECOVER POSSESSION OF PROPERTY—RIGHTS OF STRANGERS TO SUIT.—
The action to recover the possession of property having been directed against
the person who, according to the registry, appears as withholding the rights be-
longing to the plaintiff, the fact that the action has not likewise been directed
against other persons who consider themselves possessors of the lands sought
to be recovered cannot constitute a bar to its successful outcome, because
not being parties to the action, their rights cannot be prejudiced thereby,
and they may enforce them in the proper proceeding.

WASTE LANDS—POSSESSION WITHOUT TITLE—PRESCRIPTION—REVERSION TO THE
STATE.—The possession without title of uncultivated lands for a period of
more than thirty years is sufficient to prove ownership in favor of the res-

pective grantees, since where this period of possession has elapsed, the grants remain in force and effect and the lands cannot revert to the State.

NULLITY OF ACTS—NULLITY OF RECORD ENTRIES.—Acts performed contrary to the provisions of the law are void, and entries made in the registry of property by virtue of such acts are likewise void.

### STATEMENT OF THE CASE.

This is an action instituted in the District Court of San Juan by Pierre Enmanuel, Baron du Laurens d' Oiselay, against the People of Porto Rico, for the recovery of lands, which case is pending before us on an appeal in cassation, now ordinary appeal, taken by the defendant, who was represented by the *fiscal* of this Supreme Court, counsel for the respondent being Attorney Eduardo Acuña.

On January 30, 1901, Pierre Enmanuel, Baron du Laurens d' Oiselay, brought an action against the treasurer of this Island, in the District Court of San Juan, alleging the following facts: That the King of Spain, Don Carlos III, in 1776, granted four square leagues of land to the Duke de Mahon, which gift was confirmed in 1792 by King Carlos IV, said extension of land being subsequently reduced to 83⅘ *caballerías* [each *caballería* consists of 33⅓ acres] which were allotted in the townships of Naguabo, Fajardo, Luquillo, Loiza, and Pepino, but as some years elapsed without the possession thereof becoming effective by proper measurement, claims ensued which resulted in the designation of 45⅔ *caballerías* in *barrio* Cibao, within the municipality of Pepino, now Lares, as belonging to the Duke de Mahon, which lands were measured and delivered to him; that these lands, owing to the changes occasioned by the lapse of time, now consist of 4133 *cuerdas*, equal to 1624 hectares, 43 ares and 3 centares, situated in *barrios* Callejones and Piletas, within the district of Lares, judicial district of Aguadilla, the same being planted with coffee, pasture and bushes, and bounded on the north by lands belonging to José Gregorio Vélez, on the south, by those of Miguel Jesús Colón, on the east, by the Camuy river, and on

the west, by lands of Juan José López, according to the metes and bounds set forth in the bill of complaint; that the Government of the Island, considering that the representative of the Duke de Mahon did not comply with the conditions as to cultivation, to which he was bound, the board of waste lands took up the matter and on June 3, 1854, decided upon the reversion to the Crown of Spain, of the lands granted to the duke, and afterwards, by a decision of the same board, on December 22d of aforesaid year the Lares lands were given to seventy-four persons who had been occupying them, each grantee being formally put in possession of his respective portion; that upon being apprised of said decisions, the successor of the Duke de Mahon, represented by María Balbo Bertone de Crillon, who, by reason of her minority, was represented by Count Manfredo Balbo Bertone de Sambuy, addressed a petition to the Queen of Spain requesting that the term of one year be allowed her within which to make the clearings and cultivation of aforesaid lands, and thereby be given·full possession thereof, the decisions of the board of land apportionment, meantime, to remain in abeyance. In response to said petition two royal orders were issued, the first, dated April 8, 1857, directing the Governor of Porto Rico to report to the Queen upon the state of the matter and to communicate his opinion as to the means of reconciling, if possible, the family interests of the duke with the agricultural interests of the Island, and that until the Queen should give her final decision thereon, the effects of the notice served upon the heirs of the duke be left in suspense, without in any manner awarding to new grantees the lands in question; and the second, dated January 20, 1859, ordering the Governor to extend to the heiress of the duke all the protection and facilities to which she was entitled, in order that she might take all proper steps to the end of recovering the lands; that the board of waste lands, at their session of October 25, 1857, resolved that the antecedents of the matter be referred to their fellow-member, the *auditor*

*de guerra* (counsellor appointed to assist military officers with his advice in law proceedings), who was commissioned to prepare a draft of the report to be submitted, in compliance with the Queen's order; that on April 7, 1859, the Governor and Captain-General of this Island, taking into account the antecedents of the case, and considering that in the opinion of the Government of Madrid, the grant made to the Duke de Mahon was not a simple gift, but a compensation for services rendered to the Nation, and having in mind, moreover, that the heiress of the duke was a minor, decided, in conformity with the *auditor de guerra,* that as soon as Count de Sambuy should appear in the district, he again be put in possession of the lands that had been awarded to the Duke de Mahon, according to the plans and documents to be produced by him; that the data relating to said possession, which were filed with the record of the general government, could not be found, because said record did not now exist; but it is a fact, beyond doubt, that said possession was given in compliance with the orders of the Government, for in the official letter-book of the year 1859 of the municipality of Lares, appears copied a communication wherein the *alcalde* states that he forwards to the Governor the record of the proceedings instituted by the *alcalde* relative to the possession given to the successor of Duke de Mahon, of 20⅔ *caballerías* of land, in *barrio* Cibao, of said district, pursuant to a communication from the Government, dated April 7, which was placed at the head of the record of said proceedings; that said possession is proven, moreover, by the fact that the taxes were paid by the Estate of Duke de Mahon from 1862, without interruption, down to the fiscal year 1898-1899; that while matters thus stood, Virgilio Acevedo, desirous of obtaining possession of the lands belonging to the Estate of Duke de Mahon, began to urge the *colonos* (settlers) to resist payment of rents they had been paying, under the pretext that said Estate had forfeited its dominion rights, and succeeded in getting them to transfer to him the title to

said lands, by deed dated July 5, 1900, executed before the notary of Lares on the assumption that they were the owners thereof by reason of the grant made in their favor in 1854, which was not true, inasmuch as the grantees had been dispossessed of the rights acquired by them, and if they remained on the estate, it was in the character of settlers, as shown by the fact that they had paid rent to the successor of Duke de Mahon, the latter paying the taxes assessed on said property; that with aforesaid deed Acevedo applied to the office of the *alcalde* of Lares, requesting that the successor of the Duke de Mahon be struck off the taxpayer's roll, which request was forwarded to the Treasurer, who, on September 4th of the same year, rendered a decision directing that the Duchess de Mahon be eliminated from the assessments, and the landholders entered instead, with the *cuerdas* of land respectively held by each, according to classification, as provided for in the hand-book for the guidance of tax-assessors, and that a certificate of said decision be forwarded to the registry of property, so as to leave without effect the record in favor of Acevedo, the landholders being ordered to surrender their titles to the lands held by them, in consequence of which decision, the lands belonging to the Estate of Duke de Mahon were recorded in the registry as belonging to the People of Porto Rico, by virtue of the order of said Treasurer; that the Baron de Laurens as heir of the Duchess de Mahon, came to this Island for the purpose of defending his rights, and having submitted the documents establishing the same to the Treasurer, the latter admitted that among said documents there were royal orders and provisions of the general Government of Porto Rico which, if authentic, would indicate that the reversion of the lands had been suspended. and the representatives of the heir of the Duchess de Mahon reinstated in the possession thereof, but that it devolved upon a court of competent jurisdiction to decide upon the authenticity, of said documents and whether or not the con-

ditions and requisites of the orders by virtue of which the revision was suspended, had been fully complied with, although he does not hesitate to declare that if said orders and provisions had been registered in the proper archives, the action taken by his office would have been omitted, and that, in his opinion, said documents constituted very important evidence in relation to the question and the issue thereof. As legal grounds, plaintiff alleges that the documents accompanying the complaint constitute a perfect dominion title in favor of the Duchess de Mahon and of her present heir; that the identity of the lands claimed with those recorded in favor of the People of Porto Rico, is shown by the very text of the Treasurer's communication ordering the admission to record, and that the owner of real property has a right to demand the same of the person who holds it, and to request the annulment of the record made under the latter's name in the registry; and exercising the action of ownership, he prayed that judgment be rendered, declaring that the lands in question belong to the plaintiff, and ordering the cancellation of the record made in the name of the People of Porto Rico, the same to be substituted with another in favor of the plaintiff.

The plaintiff filed with the complaint the following documents: 1. Copy of the holographic will executed September 16, 1889, by Madame de Crillon, Duchess de Mahon, who devises to Pierre du Laurens, a cavalry officer, the Lares lands situated in the Island of Porto Rico, in fee-tail, and bequeathing, moreover, the title of Duke de Mahon and Grandee of Spain, to Louis des Balbes de Berton de Sambuy; 2. Copy of the record of the death of Madame Marie Gabrielle Antoiniette de Barton de Balbe de Crillon de Mahon, which occurred at Avignon, France, on April 11, 1899; 3. Copy of the petition presented to the Governor-Captain-General of this Island, on November 26, 1828, by José Javier de Aranzamendi, as agent for the Duke de Mahon Crillon, asking that, after survey of the lands and citation of the adjoining property-owners, he

be put in possession of the 45⅔ *caballerías* which were needed
to complete the number granted him by royal bounty, that an
official communication for that purpose be addressed to the
*tenientes á guerra* [delegates of the Captain-General, acting
as mayors] of the districts of Pepino, Isabela and Loiza,
where waste and unappropriated lands were still to be found,
and issuing to him the proper dominion title, for his protec-
tion in the possession thereof; 4. Copy of the decree of the
Governor-General, dated November 20th of aforesaid year,
commissioning the *tenientes á guerra* of Loiza, Isabela and
Pepino to order the survey of the unappropriated lands
which, as claimed by the agent for the Duke de Mahon Crillon,
existed in their respective districts, to be made by a surveyor,
after citation of the adjoining landowners, it being worthy of
note that according to the statement of said duke, in the dis-
trict of Pepino there were 20⅔ *caballerías;* 5. Copy of a de-
cree of the *teniente á guerra* of Pepino, dated April 14 of the
following year, ordering the survey of the 20⅔ *caballerías* of
lands, with citation of the adjoining owners, as directed by
the Governor and Captain-General; 6. Copy of the record of
proceedings in connection with the survey had after citation
of the adjoining owners, fixing points, bearings and distances,
which took place on April 22nd, aforesaid; 7. Copy of the writ
of protection issued on March 10, 1830, in favor of Duke de
Mahon Crillon, by Captain-General Don Miguel de la Torre,
of the 20⅔ *caballerías* that had been surveyed in the district
of Pepino, with the same metes and bounds appearing on the
record mentioned above, which title to the lands in question
is issued in favor of the Duke de Mahon, that he may use,
enjoy and possess the same as owner, cultivating them in the
manner that may best suit him, without thenceforth being
disturbed in the possession thereof by any person; 8. Cer-
tificate of minutes of the abolished superior board of appor-
tionment of waste lands, from which it appears that, at a sit-
ting had in April, 1854, taking into account the royal orders

referring to the waste lands held in this Island by the Duke de Mahon Crillon, and in view of the reports submitted by the local boards of the towns of Río Grande and Lares, whereby it is shown that the heirs of said duke did possess in the first-mentioned district a certain number of *caballerías,* without stating how many, and 20⅔ *caballerías* within the territory of the other, which lands, according to both reports, not only were in a state of abandonment, but there was no person commissioned to satisfy the royal dues accruing thereon, the said board of apportionment decided upon classifying them as unappropriated lands, and instructed their fellow-member, the *auditor de guerra,* to prepare the proper notices, so that by this means they might be distributed among such persons as should apply for them, without prejudice to said decisions being reported to the Queen; that at another sitting the same board, at the request of the municipal board of Lares, which pointed out the convenience of granting to seventy-four neighbors whom it mentioned, the lands already occupied by them, the same forming part of those that had belonged to the Duke de Mahon Crillon, it decided to grant said lands to the occupants, not exceeding, however, one hundred *cuerdas* to each, the proper order for the survey thereof to be taken out within two months, and the prescribed dues paid; and it was further decided to make allotments of lands, also belonging to the Duke de Mahon in the Lares and Río Grande districts, to thirty-four persons mentioned in aforesaid certificate; and, finally, that at a session held October 25, 1857, two royal orders were read, dated respectively March 18th and April 8th of the same year, the former being accompanied by a memorial addressed to the Spanish Minister of State by the Cavalier Berton de Sambuy, guardian of the infant heiress of Duke de Mahon, referring to lands granted by Kings Carlos III and Carlos IV to the first duke of that name, and the other inclosing a petition of the writer addressed to the Queen, wherein, as in the memorial, an extension of time was

requested for said lands to escheat to the State, the Queen directing that the antecedents and present condition of the matter be set forth and an opinion given as to the manner of reconciling, if possible, the interests of the duke's family with the agricultural interests of the Island, and that, pending the Queen's final determination of the matter, the effects of the notice served upon the heirs of the duke, through the Consul of France, be kept in abeyance, no awards of any kind to be made to new grantees in the meantime of the lands not yet cultivated, to which reference is made in the aforesaid royal order and accompanying petition; the decision of the board being to the effect that the antecedents and royal provisions, mentioned above, be referred to their fellow-member, the *auditor de guerra,* for the purpose of preparing a draft of the report that was to be transmitted to the Queen; 9. Copy of the petition of Cavalier Berton de Sambuy, addressed under date of April 1, 1857, to the Queen of Spain, which elicited the above-mentioned Royal Order of April 8th, in which petition Count Manfredo Balbo Bertone de Sambuy, representing María Balbo Bertone de Crillon, heiress to the Duchy of Mahon, states that he had received by a tardy and indirect channel the notice given to the Consul of France in this Island by the chairman of the board of apportionment of lands, to the effect that said board, at a session held on May 24, 1856, in view of Royal Decree of September 15, 1852, declaring that the 27 *caballerías* of land situated in Río Grande and Lares had escheated to the Crown, and of the one of December 13, 1854, in response to the last claim made by the Duke de Mahon's family had decided to notify said family that if they still desired to preserve some of the lands granted to the Duke in Naguabo, Fajardo and elsewhere, they should immediately appoint a duly authorized agent to specify the metes and bounds of these lands and put the same under cultivation within the period of one year, in the manner prescribed in the circular of April 23, 1856, and pay the dues, as

otherwise they would revert to the Crown; which petition closed with the request that he be allowed one year from the day his ward should attain her majority and be put in condition to assume full possession of the lands in question and to carry out the clearing and cultivation thereof, and that meanwhile the decision of the board of apportionment of lands of this Island be declared without effect and the restitution of the aforesaid 27 *caballerías* ordered, if they really have been declared to have escheated; and in case that, either through regular decisions of the board or by legal prescriptions, some portion of these lands should already belong to other lawful owners, who cannot be dispossessed, that in place thereof other lands be ordered assigned to the Duke de Mahon's family, the same to be equivalent to and in identical conditions with those described in the royal *cédulas* of concession, dated July 4 and September 25, 1776; 10. Uncertified copy of the Royal Order of April 8, 1857, elicited by the preceding petition, and containing the particulars hereinbefore mentioned; 11. Uncertified copy of the Royal Order of January 20, 1859, wherein the Queen of Spain instructs the Governor-General of this Island to extend to Count Manfredo Bertone de Sambuy all the protection and facilities due to his rank, in order that he may take proper steps to recover the lands inherited by his daughter-in-law and ward, María Bertone de Crillon, Duchess de Mahon and Grandee of Spain of the first class; 12. A communication from Governor-General Cotoner, dated May 7, 1859, addressed to Count Manfredo Bertone de Sambuy, wherein is inserted the decree of the general Government, dated April 7th, same year, in conformity with the opinion of the *auditor de guerra,* directing that the representative of Duke de Mahon be reinstated in the possession of the lands whereof he had been dispossessed, according to the plans and documents that may be produced by him, leaving unimpaired the rights of those possessing them in whole or in part, to be prosecuted at such place and

in such manner as provided by law, Her Majesty to be duly
informed thereon; which decree was issued in consequence of
the proceedings instituted by Count Manfredo Bertone de
Sambuy, as representative of the Estate òf Duke de Mahon
Crillon, to recover possession of the lands he had in this
Island; 13. Uncertified copy of the order issued to the local
authorities of Fàjardo, Naguabo, Luquillo, Ceiba, Lares, Isa-
bela, and Río Grande, on April 7, 1859, acquainting them with
the decree of the same date, for their information and guid-
ance; 14. Certified copy issued by the secretary of the munici-
pality of Lares, of a communication appearing in the letter-
book of the year 1859, which reads as follows: "Your Excel-
lency: I have the honor to forward to Your Excellency the
record of proceedings instituted by this *alcaldía* for the pur-
pose of giving possession to Count Sambuy, as lawful repre-
sentative of the Estate of His Excellency, the Duke de Mahon
Crillon, of 20⅔ *caballerías* in *barrio* Cibao, within this dis-
trict, pursuant to Your Excellency's communication, dated
April 7, this year, which is placed at the head of said record.
Lares, June 4, 1859;" 15. Certified copy of a communication
from the Treasurer, dated September 4, 1900, to the *alcalde*
of Lares, which reads as follows: "In view of the action taken
by the municipal corporation at a special session held August
27, last, copy whereof was forwarded by you with an official
communication dated the 1st instant, with reference to a peti-
tion, supported by documents, from Virgilio Acevedo y Her-
nández, who requests that the Duchess de Mahon Crillon be
excluded from the posted assessment roll of land taxes for
1900-1901 and that in her stead the aforesaid Acevedo be
included therein as assignee of the lands purporting to be the
property of said Duchess in your municipality, which lands
were acquired by him from their lawful possessors, that is, the
rights and actions accruing to the holders who had been in
peaceful possession thereof; in view also of the appeal taken
by Virgilio Acevedo from the said action alleging that the

municipal corporation rendered no decision, but, on the contrary, had forwarded the antecedents of the matter to this office to be passed upon; and inasmuch as on examination of said antecedents it appears: (1) That since 1776 a grant of lands was made to the Duke de Mahon Crillon, consisting of 27 *caballerías,* or 5,400 *cuerdas,* in Rio Grande and Lares, which lands he has not used nor cultivated, according to a circular of the Governor and Captain-General, published in *The Gazette,* No. 67, of June 6, 1854; (2) That by Royal Order of September 13, 1852, it was declared that said lands, situated in Río Grande and Lares, which had been neglected and kept without cultivation by the grantee, should revert to the Crown, proper proceedings being at the same time ordered to be instituted for the purpose; (3) That the superior board of apportionment of waste lands decided to declare that aforesaid lands had escheated to the State, and ordered that notice thereof be published, so that persons having the qualifications prescribed by law, might apply for them, if they so desired; (4) That the municipal corporation of Lares, in a resolution, passed August 18, 1854, recognized the award made in usufruct and without ownership to the same persons who had been the occupants of the lands in question; (5) That on December 27, 1854, the board of land apportionment awarded the escheated lands to those possessing them, not to exceed, however, 100 *cuerdas* to each tenant who was bound to take out the proper measurement-permit within two months, and pay the prescribed dues, which requisites do not appear to have been complied with; (6) That all the tenants, or part of them, had, by public deed executed in Lares before Acting Notary Salvador Picornell y Cardona, on July 5, this year, transferred to Virgilio Acevedo y Hernández all the rights and actions that might have accrued to them, over aforesaid lands, situated in *barrios* Callejones and Piletas of that municipality, the whole aggregating 4,133 *cuerdas,* equivalent to 1,624 hectares, 43 ares, and 43 centares, bounded by unappropriated

lands and lands belonging to José Gregorio Vélez, José Miguel Colón, Juan José López, and by the Camuy River; and considering (1) that the lands granted in 1776 to the Duke de Mahon Crillon belong to the State, now the Insular Treasury of Porto Rico, from the time they were declared escheated by the board, nobody having a right to them, except the Insular Treasury; (2) that although awarded by the same board to the seventy-four tenants aforesaid, the possessory proceedings had not been perfected, owing to non-compliance by the tenants with the requisites prescribed; (3) that the Duchess de Mahon Crillon cannot and should not have been included in the land-tax assessment, and those who placed her upon the roll without due authorization shall be held responsible for the consequences; (4) that neither can the tenants assign or transfer what does not belong to them, for which reason the deed of conveyance executed in favor of Virgilio Acevedo is null and without effect; now, therefore, I decide as follows: 1. That the Duchess de Mahon Crillon be forthwith eliminated from the assessment-roll and in her place the holders of the lands be separately included therein with the *cuerdas* respectively held by them, specifying the classification thereof and other circumstances required by the hand-book for the guidance of assessors; 2. That a certified copy of this resolution be forwarded to the registrar of property so that the record of the conveyance in favor of Virgilia Acevedo, contained in aforesaid public instrument, be given no effect; 3. That all the landholders be required to surrender at the *alcaldía,* against receipt, such titles of grants as they may possess conferring upon them a right to the usufruct of the lands, which documents you shall forward, with a list thereof in duplicate, to this Treasury, in order that they may be filed with the record, or, in the absence of such documents, a certificate to that effect. The foregoing is communicated to you for your information, that of the municipal council, of Virgilio Acevedo and of the landholders, both the latter to be informed

through proper notifications which, upon being duly served and returned, shall also be forwarded to this office; 16. Certificate issued by the *alcaldé* and secretary of the municipality of Lares, showing the taxes paid by the Duke de Mahon Crillon, and by the Estate of said Duke or Duchess de Mahon Crillon, from 1862 to 1899; and 17. A letter addressed by the Treasurer under date of January 4, 1901, to Baron du Laurens d'Oiseley, containing the statements attributed to him in the complaint.

The *fiscal* of this Supreme Court, representing the Treasurer of Porto Rico, in answering the complaint, alleged, by way of dilatory exception, the want of legal capacity on the part of the plaintiff, setting forth, in support of said exception, that King Carlos III, having, by Royal *Cédulas* of March 30, 1872, *(sic)* and May 13, 1783, conferred upon Louis Balbo Bertone, Duke de Crillon, in compensation for services rendered to the Crown of Spain, the title of Duke de Mahon, carrying with it that of Grandee of Spain of the first class, and as this high dignity demanded the foundation of an entailed estate to be perpetually attached to the Grandeeship, the Duke de Mahon had set apart for this purpose one of the four square leagues of land that King Carlos III had himself granted him in this Island; that part of the property bestowed upon the Duke de Crillon having been constituted as an entailed estate annexed to the title of Duke de Mahon and Grandee of Spain, said title should have passed to the successive possessors of the entailed estate until the publication in Spain of the laws disentailing property, namely, those of October 11, 1820, May 15 and June 28, 1821, June 9, 1835, and August 19, 1841, which prohibited the establishment of entails and freed from entailment such properties as were then held by strict settlement, with the obligation of reserving one-half for the next in succession; that the plaintiff does not state whether he claims as possessor by settlement in tail, or as heir, but in the first case he should have proven the existence of the

entailed estate, and, at all events, he is bound to prove by means of proper documents that the estate in question, both as to the entailed half and to the other half reserved to the possessor, has by order of strict and legal succession, or by testamentary dispositions, become the property (of the claimant?), and as she has failed to prove the character and representative capacity under which she sues, in compliance with the obligation imposed by paragraph 2, article 532, of the Law of Civil Procedure, the dilatory exception should be sustained and the complaint dismissed.

The defendant also pleaded the peremptory exception of want of action, setting forth in support thereof that, notwithstanding the grant made to the Duke de Crillon by King Carlos III of Spain, in Royal *Cédulas* of July 4 and September 25, 1776, of four square leagues of land in this Island, he was not given possession thereof, nor even had their location or locations in the Island been made known, for which reason in the year 1837 the agents of the Duke's family were still pressing their claim; that inasmuch as the grantees had not complied with the necessary condition of clearing and cultivating the lands, the Government of this Island had reported the fact to that of Spain, and thereupon the Royal Order of September 15, 1852, was issued, copy whereof accompanied the complaint, and in compliance therewith the board of apportionment of waste lands declared that the lands granted to Duke Mahon Crillon had reverted to the Crown, Circular No. 77 of July 3, 1854, published in the Official Gazette, being issued to that effect; that on December 27th of the same year, the board of apportionment of waste lands awarded the escheated lands to those who had been in possession of the same, on condition that the allotments should not exceed 100 *cuerdas* to each holder, and with the obligation to take out the proper licenses for the measurement thereof within the period of two months, and to pay the established dues, which requisites do not appear to have been complied with; that the Estate of

Duke de Mahon Crillon having no legal representative in this Island, the aforesaid decisions were notified to them through the French Consul, whereupon Count Manfredo Balbo Bertone de Sambuy, in his capacity as *protutor* and father-in-law of young María Balbo Bertone de Crillon, heiress to the Duchy of Mahon and to the title of Grandee of Spain of the first class, presented a petition to the Queen of Spain under date of April 1, 1857, a copy whereof was filed with the complaint, which petition gave occasion for the Royal Order of April 8th of the same year, of which a copy was also joined to the complaint by the plaintiff; that upon Count Manfredo Bertone de Sambuy's trip to this Island for the purpose of clearing up the rights of his daughter-in-law and ward, the Duchess of Mahon, an official recommendation to the Governor of this Island was given him by Royal Order of January 20, 1859, to the end that all facilities to which he was entitled by his rank should be afforded him, as shown by the copy of said royal order filed with the complaint; that once here, Count Manfredo Bertone de Sambuy applied to the highest authority in the Island which was then represented by the "Segundo Cabo" (or Lieutenant-Governor) Mediavilla who, going beyond his powers, directed, by decree of April 7, 1859, that the representative of the Duke be put in possession of the lands that had been awarded to him, according to the boundaries marked out in the plans and documents he should produce, leaving unimpaired the rights of those in possession, and ordering said decision to be reported to the Queen; that it does not appear that such possession was given, for with reference thereto the only antecedent to be found is the communication from the *alcalde* of Lares, dated June 4, 1859, mentioned in the complaint; that although the Estate of the Duke de Mahon is shown to have paid taxes to the municipality of Lares from 1862 to 1899, this fact is not sufficient evidence to establish ownership, being only a requisite which, joined with others, serves to establish possession of the estate,

without prejudice to a third party; that neither before nor after the year 1859 have the family of the Duke de Mahon Crillon fulfilled the conditions imposed upon them to clear and cultivate the lands awarded him in 1776; that by public instrument of July 5, 1900, most of those who without a just title had been in possession of the lands which form the subject-matter of this controversy, transferred their presumed rights to Virgilio Acevedo Hernández, who requested the municipal council of Lares to exclude the Estate of the Duke de Mahon from the assessment-roll, and include him instead, which request having been submitted to the Treasurer of Porto Rico, he rendered the decision of September 4, 1900, copy whereof was filed with the complaint. The defendant alleged, as legal grounds, that in issuing his decree of April 7, 1859, the Captain-General had gone beyond his powers, which should have been confined to a compliance with the Royal Order of April 8, 1857, leaving the determination of the matter to the Queen of Spain, who, in Royal Order of May 20, 1859, did not authorize him to order the delivery as was done by the Captain-General's decree of April 7, 1859; that the payment of taxes is no evidence of ownership; that neither the Duke de Crillon and Mahon, nor his heirs, had fulfilled the condition as to clearing and cultivating the lands awarded to him by the Crown of Spain, wherefore they could not acquire full ownership of said lands; that real actions with regard to real property prescribe after thirty years, according to article 1963 of the Civil Code; and that by virtue of the Treaty of Paris between the United States of America and the Kingdom of Spain, the United States acquired this Island with all the buildings, public highways, and other immovable property which in conformity with law belong to the public domain and as such formerly belonged to the Crown of Spain, and no transfer of ownership to the People of Porto Rico having been made in the Organic Act of Porto Rico with respect to said property, the same should be considered as public property belonging to the Peo-

ple of the United States, according to articles 2 and 8 of the Treaty of Paris and section 13 of the Organic Act of Porto Rico, and it now devolves upon the sovereign power of the United States to do what was left undone by the Queen of Spain, namely, to pronounce the final decision which had been reserved in the Royal Order of April 8, 1857. The *fiscal,* in closing, prayed that the dilatory exception of the plaintiff's want of capacity be first sustained, or, otherwise, that the allegation that there was no cause of action be sustained and the complaint dismissed upon that ground, with costs against the plaintiff; and that, in the latter case, judgment be rendered declaring that the plaintiff's claims should be substantiated before the United States Government, upon which devolved a final decision in the matter.

The trial being open for admission of evidence, at the instance of the plaintiff there was joined to the record a copy of the certificate issued by the Treasurer of Porto Rico, September 14, 1900, for the purpose of recording at the registry of property, in favor of the People of Porto Rico, the 4,133 *cuerdas* of lands situated in *barrios* Callejones and Piletas, of Lares, within the judicial district of Aguadilla—the same being planted with coffee, pastures, and brush, according to the boundaries described in the deed executed in favor of Virgilio Acevedo y Hernández, July 5, 1900, and with the points of demarcation specified in the title of protection issued March 10, 1830, in favor of Duke de Mahon Crillon, it being noticeable that said certificate contains a statement to the effect that the lands in question belong, by dominion title, to the People of Porto Rico, for, although they had been awarded in the year 1776 to the Duke de Mahon Crillon, the latter having failed to cultivate them, said lands were declared to have escheated by the board of apportionment of waste lands, about the year 1854, in compliance with Royal Order of September 15, 1852, which record of possession was entered at the regis-

try of property of Aguadilla under date of September 14, 1900.

Although at the instance of the plaintiff a communication was addressed to the Secretary of Porto Rico, requesting that from the records delivered by the Spanish Government a certificate be issued of the official communication addressed by the *alcalde* of Lares, on June 4, 1859, to the Governor-General of the Island, reporting that the representative of the Estate of the Duke de Mahon Crillon had been put in possession of the Lares lands, and certifying also as to the other antecedents relating to said official communication, this evidence could not be introduced because the index of the records sent to the Library of Congress, Washington, packed in 249 boxes, containing 2,246 files of papers, refers to all sorts of matter so confusedly jumbled together, that it was impossible to obtain the desired evidence.

The defendant proposed, as evidence, to be procured from the general archives of this Island, the text or authorized copies of the Royal Grants of March 30, 1782, and May 13, 1783; of Royal *Cédulas* of July 4 and September 25, 1776; of Royal Decree of September 15, 1852; of Royal Orders of April 8 and January 20, 1857; and of the circulars of the board of apportionment of waste lands, dated July 3 and December 27, 1854; but the only exhibits forwarded were the books of the board of apportionment of waste lands, from September 1, 1843, to September 19, 1863, and from 1866 to 1873; the record relating to the lands of the Duke de Mahon Crillon; copy of the circular of June 3, 1854, declaring that the lands granted to the Duke de Mahon Crillon had reverted to the Crown of Spain, because of failure to comply with the necessary conditions; copy of the draft of notice served upon the heirs of the Duke de Mahon Crillon, through the French Consul in this Island, dated June 7, 1857, which reads as follows:

"Communication to the Consul of France in this Island: After examination of the record relating to the grant made

by Kings Carlos III and Carlos IV to Duke de Crillon; the
Royal Order of September 15, 1852, declaring that it was neces-
sary to proceed to the reversion of the 27 *caballerías* remain-
ing uncared for and without cultivation by the grantee, in
Rio Grande and Lares; the record of the proceedings in which
this declaration was made; and, lastly, the Royal Order of
December 13, 1854, issued on the occasion of the claim re-
cently pressed by the heirs of His Excellency the Duke, the
board of apportionment of waste lands of Porto Rico, at a
meeting held, etc., decided that said heirs be notified, through
you, that if they still desire to preserve some of the lands that
were granted to them in Fajardo, Naguabo, or any other
locality, they must appoint an agent who shall produce the
measurement and boundaries thereof, and put them under
cultivation within one year, in compliance with the conditions
prescribed in the circular of which I inclose a copy, and pay
the royal dues; for in that case their rights shall be respected,
but otherwise said lands shall be declared to have escheated,
in conformity with the terms of aforesaid circular. Pursuant
to this decision, and in order that the heirs of His Excellency
the Duke may not think that they have been slighted, although
the principle that the authorities should address themselves
to each and every one of the persons who might be affected
by their determinations, could never be sustained, I communi-
cate said decision to you for the purpose above stated. God,
etc.—June 7, 1856. To Monsieur the Consul of France in this
Island.—Techo.''

And, finally, copy of a communication from the chairman of
the superior board of apportionment of waste lands to the
Governor of this Island, dated March 31, 1869, and of another
communication from the President of the Council of Adminis-
tration, dated June 14, of the same year, both documents hav-
ing reference to a petition addressed under date of July 25,
1865, to said Governor by Count de Sambuy, as representa-
tive of the Duchess de Mahon Crillon, accompanied by several

documents to be kept on file by the Government so that the proper authorities might safeguard the grant made by King Carlos III and the foundation instituted by Duke de Mahon, the Conqueror of Minorca.

At the hearing the plaintiff's attorney and the *fiscal* argued upon the dilatory exception of want of legal capacity on the part of the plaintiff, which exception was overruled, and then both parties pleaded upon the essential part of the case, advancing such arguments as were deemed favorable to their respective contentions.

The District Court of San Juan, by a majority vote, rendered judgment on August 1, 1902, sustaining the complaint, and accordingly declared that the lands formerly situated in the district of Pepino, now of Lares, referred to in the certificate of September 14, 1900, issued by the Treasurer of this Island, by virtue whereof the 4,133 *cuerdas* of land, described therein, were, by order of said Treasurer, recorded under date of September 16, 1900, on folio 51, volume 28 of the municipal council of Lares, estate No. 1677, entry 1, in the Registry of Property of Aguadilla, as belonging to the People of Porto Rico, were the property of the plaintiff, and ordering said lands to be left at the free disposal of the latter, and that aforesaid record be cancelled, without special imposition of costs.

From the foregoing judgment the representative of the defendant took an appeal in cassation for error of procedure and error of law, which was allowed; and the record having been forwarded to this Supreme Court, after citation of the parties, said appeal was conducted as an ordinary appeal, pursuant to the provision of an Act of the Legislative Assembly establishing the Supreme Court of Cassation as a court of appeals, approved March 12, 1903. Both parties presented in writing such pleas as were deemed pertinent in support of their respective claims, after which the hearing was had, counsel for appellant and respondent being present.

*Mr. del Toro, Fiscal,* for appellant.

*Mr. Eduardo Acuña,* for respondent.

MR. JUSTICE FIGUERAS, after making the above statement of facts, delivered the opinion of the court:

Good practice requires that before entering upon the fundamental question of ownership, we should first analyze such issues incidental to the main action to determine the question of ownership, as have been raised by the defendant, both in the answer to the complaint and in the appeal taken to this Supreme Court.

The first question to be considered is the one referring to the want of legal capacity which, by way of dilatory exception, was pleaded by the *Fiscal* on behalf of the people of Porto Rico, in answering the complaint, on the ground that the plaintiff should prove beyond doubt the character and representative capacity under which he sues, because if he does so by reason of a settlement in tail, there is wanting, according to him, evidence as to the existence of the entailed estate, which must be proven by the instrument instituting the same; and if he sues as an heir, it should have been established, by means of documents and other proper evidence, that the property claimed has, by strict and legal succesion or by a duly executed will, come to the possession of the plaintiff.

In this case there is nothing which refers to entailed estates, nor is such issue raised between persons contesting the benefit thereof; but even granting this, for the sake of argument, it would still appear that the deficiencies pointed out by the *fiscal* refer to the absence of those documents upon which the plaintiff bases his right, and this, which is known as *sine actiones agis,* would affect the fundamental question (article 503 of the Law of Civil Procedure), whence it follows that the defendant has confused such a lack of right of action with the want of legal capacity mentioned in para-

graph 2 of article 502, and article 532 of aforesaid Law of Procedure.

The plaintiff has complied with the last two precepts above enunciated, inasmuch as in claiming his rights as legatee of the Duchess de Mahon Crillon, he has proved his character as such by the will of said lady and by her certificate of death, whence his capacity is perfectly defined, a capacity which, on the other hand, has already been recognized by the Adminis-- tration, and cannot now be ignored by its representative.

The second issue raised is that set forth by the *fiscal* in the following terms: ''That only the President of the United States or, in a proper case, the Governor of Porto Rico, can pronounce the decision left pending by the Queen of Spain;'' but an important point is here lost sight of, namely, that it is not a question of giving or withholding a decision of an administrative character, by which lands belonging to either political entity mentioned above, are granted or refused, for which it is evident that this court has no powers; but one of a right to protection in the possession of lands, which consti- tutes a title of ownership, dating as far back as March 10, 1830, and confirmed by the decree of April 7, 1859; hence the point discussed in this case is whether said ownership has subsisted up to this day, in the succession of time, or whether by acts and occurrences contrary to law the plaintiff has been deprived of each and every one of the rights pertaining to said ownership.

If such is the case, it undoubtedly devolves upon the judi- cial authority to extend to private property that protection wherewith it has been exclusively entrusted by the law, and in that sense it is evident that it acts within the scope of its powers in taking cognizance of the matter and deciding as to whether or not a violation has been committed against said ownership, such questions having at all times appertained exclusively to the ordinary courts.

These principles are embodied in the wise Constitution of

the United States which declares, under article V (of Amendments thereto), that no person shall be deprived of his property without due process of law, and this right, as is natural, must be determined by the proper judicial authority, whose power must be recognized and respected whenever, as in the present case, questions of ownership are dealt with.

And now, entering upon the real and only fundamental issue involved, it is necessary to determine whether each and every one of the proofs required in all actions instituted for the recovery of possession have been produced, these proofs being, in the first place, that of ownership, and, in the second place, the identification of the property sought to be recovered.

In examining the evidence submitted, due regard must be had, as is proper, to such public documents issued by competent authority as have been brought to the record, within the prescribed period of time, and which have not been challenged as spurious, either civilly or criminally, and to such evidence as has been taken, after citation of the adverse party, setting aside all antecedents which can be used only as means of illustration but do not constitute evidence having all the requirements prescribed by law.

It is a fact admitted by the *fiscal,* representing the defendant, that lands were granted in this Island to Duke de Crillon, afterwards Duke de Mahon, by virtue of Royal *Cédulas* of July 4 and September 25, 1776, which grant was ratified by Royal *Cédula* of July 19, 1792.

The plaintiff, Pierre Enmanuel, Baron de Laurens d'Oiselay, has fully proven that the lands under discussion had been held, since April 22, 1829, not only in the name of the Duke, but also in that of the Duchess, from whom the plaintiff derives his right, said possession, moreover, being recognized by the board itself in the minutes of their session of April 3, 1854, when the lands in question were declared by them to be waste lands; and, besides, the plaintiff's right of ownership

is fully borne out by the title of protection of March 10, 1830, maintaining the Duke de Mahon Crillon in the possession of said lands, issued, with authority therefor, by Captain-General Don Miguel de la Torre.

The action taken by the board of apportionment of waste lands, at their session of April 3, 1854, declaring escheated to the Crown the lands claimed in this controversy, on the ground that they had been abandoned, cannot have the scope and importance attached to it in this suit, namely, that of wiping out the rights springing from the titles and acts mentioned herein, because said action was taken without prejudice to submitting the same to the approval of the Queen, which requisite does not appear to have been complied with, and because said action should be understood as having been rendered ineffective by Royal Order of April 8, 1857, issued at the instance of the legal representative of the Duchess de Mahon, by which sovereign decision the effects of the notice given to the heirs of the Duke, through the French Consul, in consequence thereof, was directed to be left in suspense. And aforesaid royal decision went still further, inasmuch as it was also ordained therein that the lands not yet put under cultivation should *in no wise* be awarded to new grantees; all this with the express reservation of the Queen's final decision in the matter, which means that the decision of the board of apportionment of waste lands was not final, and Captain-General Cotoner, so understanding it, referred the royal order to aforesaid board, on July 21, 1857, that is, to the very body that had declared the escheat, as may be seen at folios 27 to 31, inclusive, of the record, in which appears the aforesaid petition and a transcript of the royal order mentioned above, which documents must be accepted as authentic, inasmuch as they have not in any manner been contested by the defendant.

To further strengthen the belief that aforesaid decision had produced no legal effect whatsoever, we have the order of the Governor-General of this Island, dated April 7, 1859,

directing that Count de Sambuy, as representative of the Estate of Duke de Mahon, be again put in possession, and it cannot be maintained that said order was not carried out, on the ground that the papers connected with the proceedings thereof were not joined to the record, since on folio 37 a certificate appears, issued by Carlos Budet y Texidor, secretary of the municipal council of Lares, wherein the letter-book of 1859, existing in the archives of said corporation, is referred to, and a transcript therefrom given of the draft of the official communication of June 4, 1859, transmitting the record of proceedings instituted by the *alcalde* of Lares for the purpose of *giving possession* of the 20⅔ *caballerías* of land in *barrio* Cibao of that municipality, to Count de Sambuy, in the representative capacity under which he then sued.

If the papers connected with the possession proceedings which are shown to have been transmitted to the Governor-General were mislaid or lost in his office, and it has therefore been impossible to bring them to the record, such an accident, for which the plaintiff was not responsible, cannot impair his rights, when, as in the present case, the fact of the possession given as a result of the Governor's order has been proven by the draft of said communication of a remote date the authenticity whereof cannot be questioned, because it refers to what is found in the archives of 1859, and because that certificate, issued by the secretary, wherein is inserted the draft of the letter of transmittal of the record of proceedings dealing with the possession given, no doubt with all the established formalities, is viséed by the acting *alcalde* of Lares and stamped with the seal of his office, which formalities preclude all idea of falsification, because the secretary issuing the certificate, who is the custodian of the draft of the letter, knew that he was doing so under his official liability, according to rule 4 of article 596 of the Law of Civil Procedure.

Said certificate, containing the draft of the letter of transmittal of the record of proceedings for the purpose of giving

possession, has the character of a formal public document, according to paragraph 4 of article 595 of aforesaid Law of Civil Procedure, because it is a copy made and authenticated by the secretary in charge of the archives, by order of a competent authority, such as the *alcalde*.

Lastly, it is a custom admitted for the proper conduct of offices, and especially to avoid responsibilities for the loss of official documents transmitted, to preserve the drafts thereof, and in the present case this precaution has saved the evidence of an important fact in the suit, such as the possession consummated, which cannot now be denied without first proving the falsity of the draft of the official communication, a thing which has not been attempted, nor has there even been a doubt as to the existence of the original draft; and such being the case, the possession given must be admitted, because the said draft is effective herein, and because to deny the possession given, while accepting the truthfulness of the draft, would be really inconsistent.

The fact of possession is likewise strengthened by the further fact, also proven and admitted by the *fiscal,* that the Duke de Mahon, or his successors, or the Duchess de Mahon Crillon, had paid the taxes assessed on said lands, from the year 1862 to the year 1899, that is, thirty-seven years; from which circumstance it must be inferred that said lands were under cultivation, for, until the change of sovereignty, and the approval on March 1, 1902, of the revenue law in force, taxes were imposed on the basis of profits, and if there were none, owing to the absence of cultivation, said taxes could not have been assessed or collected.

These proceedings, in which an action for the recovery of possession has been exercised, are directed against the entity which, according to the plaintiff, has committed a real spoliation, that is, the People of Porto Rico, which is the one appearing at the public office of the registry of property as the detainer of his rights of ownership, and the success of the

action exercised cannot be hindered by the fact that it has not been likewise directed against others who are merely alleged by innuendo to be possessors of the lands in question, because the title by which they possess does not appear, and because it is possible that they are *colonos* of the plaintiff's; but in any event, as they have not been parties to this suit, the decision that may be rendered herein can in no way prejudice them, their rights being left unimpaired, to be asserted in the proper proceeding, when the validity of their titles, if they have any, and such other evidence as they may submit can be considered and determined.

By Royal Decree of April 17, 1884, the Regulations for the adjustment of waste lands in this Island were approved, and articles 2 and 3 of said Regulations read as follows:

"Art. 2. For the legal effects of these regulations, persons shall be considered as owners who show that they have acquired the lands by means of a royal *cédula,* a grant from the *Superior Board of Allotment of Waste Lands,* or a title issued by competent authority, and that they have complied with the conditions imposed upon them by the concession, irrespective of the time during which they may have been in possession.

"Persons shall also be considered as owners who, though lacking a dominion title, show that they have possessed the aforesaid lands, without interruption, for a period of twenty years, if under cultivation, and of thirty years, if not.

"To be understood as cultivated land it is necessary to prove that the same has been under cultivation during the last three years.

"Art. 3. All grants of lands in general, and especially those made from the year 1850 to the date hereof, with respect to which the conditions imposed have not been fulfilled, are declared forfeited, the lands reverting to the State."

By Royal Order of August 20, 1888, published in the *Gazette* of this Island of October 11, following, it is resolved "That article 3 of the Regulations be amended to read as follows:

"Grants of lands, in general, and especially those made from the year 1850 to the year 1884, with respect to the conditions imposed have not been fulfilled, are declared forfeited, the lands reverting to the State, unless the grantees have been in possession thereof for more than thirty years, which is the term fixed by the foregoing article for prescription as to uncultivated lands, held without title."

Even presuming possession without title, and that the lands in question are uncultivated, it must be declared, pursuant to the royal order and regulations cited above, that the plaintiff is the owner of the lands claimed by him, inasmuch as the grant subsists, and said lands cannot now be considered as having escheated.

The conditions required for the prosecution of an action to recover possession have been proven, such as the ownership and identification of the thing claimed, which latter evidently is that portion of lands described and recorded in the registry of property, the entry whereof must likewise be declared null and void, if the effects of the ownership existing in favor of the plaintiff are to be respected and the principle laid down in section 4 of the revised Civil Code is to prevail, namely, that acts executed contrary to the provisions of law are void, and said entry is therefore void which was ordered illegally and without complying with the requirements established by law, said errors being afterwards recognized by the Treasurer of Porto Rico, as shown by his official communication of June 4, 1901, wherein he tells the representative of the plaintiff that if he had had before him the documents, which are those filed with the record, he would not have acted in the premises as he did,—an unequivocal and honest declaration which also confirms the plaintiff's right.

In view of rule 63 of General Orders No. 118, series of 1899, of the provisions cited and the pertinent ones cited in the judgment appealed from, as also the act of the Legislative Assembly, approved March 12, 1903, and articles 358, 364 and 371 of the Law of Civil Procedure, we adjudge that we should

affirm and do affirm the judgment rendered by the District Court of San Juan, August 3, 1902, without special imposition of the costs of this appeal. This judgment is ordered to be communicated, and the record returned to the trial court.

Chief Justice Quiñones and Justice Sulzbacher concurred.

Justices Hernández and MacLeary dissented.

*Dissenting Opinion of Justices Hernández and MacLeary.*

The undersigned associate justices do not concur in the foregoing opinion, rendered by a majority of their colleagues, and in lieu thereof submit their opinion as follows:

The findings of fact of aforesaid opinion are accepted, and supplemented with the following:

According to a report a copy of which was filed with the record, prepared on March 8, 1869, in pursuance to instructions from the board of allotment of waste lands by their fellow-member Lucas García Ruíz, Count de Sambuy, representing the interests of the Estate of Duke de Mahon, addressed a petition to the Governor-General of this Island, under date of July 25, 1865, including two public documents executed in Avignon, France, on the 10th of July aforesaid, to wit: a general power of attorney conferred by the Duchess de Mahon upon Count de Sambuy, and a public instrument wherein, among other particulars, the ducal title of Mahon, together with the Grandeeship of Spain, of the first class, and the fee-tail instituted in connection with said ranks, by deed executed in Madrid on August 27, 1794, assigning to said fee-tail the lands granted to the Duke de Mahon, according to the title issued by Captain-General Don Miguel de la Torre, on March 10, 1830, are recognized in favor of María Antonia Gabriela Balbo Berthone de Crillon, the remaining lands that had belonged to the Duke de Mahon in this Island being awarded to the other heirs. These documents were presented by the Count de Sambuy, according to his statement, for the purpose of their preservation by the Government, together with other

documents referring to the Duke de Mahon, after registering the same at the *Contaduría General, Audiencia Territorial, alcaldía* of Lares and *Anotación de Hipotecas,* to the end that the proper authorities might safeguard the grant made by King Carlos III and the estate-tail founded on behalf of the Duke de Mahon, Conqueror of Minorca. Aforesaid documents, together with the petition, were referred by the Governor-General to the board of allotment of waste lands, which commisisoned their fellow-member Lucas García Ruíz to prepare the report called for.

Said member of the board, after examining the necessary antecedents, was of opinion that a report should be submitted to "His Excellency the Superior Civil Governor" to the effect that "inasmuch as said Estate (that of the Duke de Mahon) could not be considered as owner of the lands referred to in such an indefinite manner in the claim presented, if the aforesaid Estate, or its representative, should deem it advisable to assert or vindicate its right of ownership over said lands, the same must be specifically determined; and in case said lands should appear to be under cultivation or held in usufruct created by said Estate or by the representatives of the dukes, their rights therein must be respected; but should such rights be disputed by other private persons who under a different title are cultivating said lands, the representative of the Duke must resort to the courts of justice, which are the only ones having jurisdiction over matters relating to ownership; and, finally, should the lands prove to be unoccupied waste lands, then it devolves upon the board to decide as to the validity or invalidity of the grant, as it may deem proper. At the same time, His Excellency the Superior Civil Governor may be apprised that according to provisions of law in force, the public instruments forwarded by Count de Sambuy with his letter of July 25, 1865, cannot be registered in the *Audiencia Territorial,* and the *Contaduría General,* nor can they be administratively ordered to be registered at the respective *Ano-*

*taciones de Hipotecas.* Another matter is presented in the letter and deeds forwarded by Count de Sambuy, namely, the one referring to the institution of a fee-tail in connection with the Duchy of Mahon and Grandeeship of Spain annexed thereto, by entailing for this purpose one of the four leagues of land awarded in this Island to the first duke. Whether because a royal license was formerly required for the purpose of creating an estate-tail, or because the creation of fee-tails are now prohibited, it would seem that the incumbrances and impediments instituted by the deed executed in Avignon over aforesaid league of land, being contrary to our existing laws, can have no legal effect in this Island. The report called for by His Excellency the Superior Civil Governor might be drawn up in the terms above set forth, or in such others as the board should deem more appropriate. San Juan, Porto Rico, March 8, 1869. García Ruíz.''

The board of waste lands approved the report of their fellow-member, and it was also accepted by the Council of Administration, which recommended a decision to the same effect on June 14, 1869, there being no record of the Governor's determination in the premises.

The holders of the lands claimed by the plaintiff as his property having been summoned to show the right by which they held, in compliance with the resolution of the Treasurer of Porto Rico, of September 4, 1900, as appear from the record presented in the trial, none of them presented a title of ownership, while many declared that the title of the grant made to them in 1854 was on file at the *alcaldía* of Lares.

In compliance with the Treasurer's decree, the holders of the lands in question were entered on the assessment-roll of land-taxes for the fiscal year 1900-1901, with the number of *cuerdas* possessed by each, aggregating 3,826.50 *cuerdas*.

Besides the findings of fact of the judgment rendered, the dissenting justices accept the first, second, third, fourth, fifth,

and sixth conclusions of law thereof, and add thereto the following:

An action to recover the ownership of a thing can prosper only when, besides proving the ownership and identity thereof, it is exercised against the holder or possessor of the thing sought to be recovered, as was declared by this Supreme Court in a judgment delivered October 24, 1900, in conformity with the jurisprudence established by the Supreme Court of Justice of Spain, prior to the extinction of the latter's sovereignty over this Island.

Although it was shown at the trial that the Duke de Mahon Crillon had been in the possession of the lands in question, on April 22, 1829, and a writ protecting him in said possession was issued on March 10 of the following year, he thereby securing a true title of ownership, not absolute and irrevocable, but subject to the conditions governing grants of waste lands, said title remained without effect the moment the board of waste lands by their resolution of April 3, 1854, after instituting the proper proceedings, declared that said lands had reverted to the Crown of Spain, in view of the state of abandonment in which they had been left.

The aforesaid resolution of April 3, 1854, complied with Royal Order of September 15, 1852, declaring that it was necessary to proceed without delay to the reversion of the 27 *caballerias* that had been abandoned and left without cultivation by the grantee in Rio Grande and Lares, and therefore the provision of the resolution "without prejudice to reporting such action to the Queen," cannot mean that it would have no immediate legal effect or that it was to remain in suspense until approved by the Queen, but that it would be effective until amended or repealed by the Spanish Sovereign. That such was the case is shown by the fact that the board of waste lands, at the request of the municipal board of Lares, which suggested the advisability of giving to seventy-four residents the portion of lands occupied by them that had belonged to the

Duke de Mahon Crillon, decided, by a subsequent resolution, to make the award to said possessors, provided that the portion allotted to each should not exceed one hundred *cuerdas,* the proper authorization for the measurement thereof to be taken out within the period of two months.

The Royal Order of April 8, 1857, did not leave without effect the decision of the board of waste lands, of April 3, 1854, nor the award subsequently made to seventy-four holders of lands formerly belonging to the Duke de Mahon Crillon, but directed, in view of the Duchess de Mahon Crillon's petition to the Queen of Spain, requesting an extension of time for the reversion to the State of the lands granted to the first Duke de Mahon Crillon, that Her Majesty be informed as to the antecedents and state of the matter, and that recommendations be made as to the manner of reconciling the interests of the Duke's family with the agricultural interests of the Island, the effects of the notice given through the Consul of France to the heirs of the duke being left in suspense, no awards whatsoever of the lands not yet cultivated to be made to new grantees, in the meantime; and inasmuch as the object of the notice to the heirs of the Duke, through the French Consul, was to inform them that if they still desired to preserve some of the lands awarded him in Fajardo, Naguabo or elsewhere (no mention is made of Lares), he should appoint an attorney to produce the measurement and survey thereof and put them under cultivation within one year, and pay the royal dues, in which case his rights would be respected, as otherwise they would revert to the Crown, pursuant to the circular of which a copy was joined to the notice, it is evident that said notice the minutes whereof are filed with the record and bear date of June 7, 1856, does not refer to the decision of the board of waste lands, of April 3, 1854; and therefore the Royal Order of April 8, 1857, was not intended to repeal said decision, nor did it suspend the effects thereof; the more so, as the notice refers to lands not reverted to the Crown of Spain, as

had been those forming the subject-matter of the controversy, and the royal order only forbids the awarding of new grants, without cancelling those that had been made, such as the ones awarded to the seventy-four residents of Lares.

That the Royal Order of April 8, 1857, did not leave without effect the decision of the board of waste lands, of April 3, 1854, which agreed with the Royal Order of September 15, 1852, is corroborated by the other Royal Order of January 20, 1859, in which the Queen of Spain directs the Governor-General of this Island to extend to Count Manfredo Bertone de Sambuy all such protection and assistance as he was entitled to by his rank, in order that he might take proper steps to recover the lands inherited by his daughter-in-law and ward, Madame María Berton de Crillon, Duchess de Mahon and Grandee of Spain of the first class, without ordering the restitution of any particular lands to said young lady; whence it is evident that the decree of the Governor-General of this Island, of April 7, 1859, directing that the representative of the Duke de Mahon be reinstated in the possession of the lands whereof he had been expropriated, according to the bounderies shown on the charts and documents he might produce, leaving unimpaired the rights of those who possessed them, wholly or in part, to be discussed at the place and in the manner prescribed by law, far from conforming to said royal order which was one of mere protection or recommendation, is in open contradiction therewith; for the Governor, instead of rendering assistance and protection to aforesaid count for the recovery of the lands claimed by him, placed him in possession thereof,—a function devolving upon the board of waste lands, which had ordered the reversion of said lands to the Crown of Spain.

The copy of the official communication of June 4, 1859, addressed to the Governor-General of this Island, in which the *alcalde* of Lares states that he has the honor of transmitting to said high authority the papers connected with the proceed-

ings had for the purpose of giving to Count de Sambuy, as the representative of the heirs of Duke de Mahon Crillon, possession of 20⅔ *caballerías* of lands, in *barrio* Cibao, within said municipality, agreeably to the communication from said Governor, dated April 7, 1859, which was placed at the head of aforesaid papers, offered only an initial portion of written evidence, but not full and complete proof that Count de Sambuy, as the representative of aforesaid heirs, had been placed in possession of the above-mentioned 20⅔ *caballerías* of lands, for such evidence can be furnished only by the record of the proper possessory proceedings; and the absence of said record should have been supplied by some other evidence showing to the satisfaction of the court that the decree of April 7, 1859, had been complied with, notwithstanding the award made by the board of waste lands to seventy-four residents of Lares, subsequently to said board's decision of April 3, 1854, declaring the lands of the Duke escheated to the Crown of Spain. Said evidence was rendered the more necessary in view of the fact that by public deed executed July 5, 1900, divers persons, claiming by title derived from aforesaid grant, to be owners and possessors of the same lands the ownership whereof is claimed by the plaintiff, had sold them for 8,000 provincial *pesos* to Virgilio Acevedo Hernández. The plaintiff, moreover, having alleged that the holders by grant from the board of waste lands in 1854 had been dispossessed of the rights acquired, and that if they did remain on the property it was only as *colonos,* paying lease-rent to the Estate of the Duke de Mahon, he was bound to file with the record proof of the existence of the lease alleged, wherewith he would have shown that the vendors held the lands as lessees, and that the right of ownership belonged to the Estate of the Duke.

The certificates of taxes paid by the Duke de Mahon Crillon, by the Estate of said Duke, or by the Duchess de Mahon Crillon, from the year 1862 to the year 1889, cannot supply the absence of proof of possesison, for aside from the

fact that said certificates do not clearly specify the lands to which they refer, they would fill only one of the requisites demanded by articles 391 of the Mortgage Law and 436 of the Regulations for the execution thereof, to prove the possession of real estate.

The wording of the official communication from the *alcalde* of Lares, of June 4, 1859, affords no light as to what were the formalities observed in giving the possession ordered by the Governor-General, nor can it be inferred therefrom whether it was effected in accordance with the demarcation specified in the writ of protection of March 10, 1830; or whether or not there had been any claims set up by those already in possession; or whether said claims, if any, had been passed upon by the *alcalde* of Lares, or referred by him to the Governor-General for decision; or whether the holders were dispossessed, or permitted to continue in possession; which data are necessary in order to ascertain the nature, extent and scope of the possession given to Count de Sambuy, and to be able to determine whether the lands which were the object therof are the same that the plaintiff claims as his property.

The attorney for the plaintiff has presented as evidence of the ownership alleged such documents as seemed to him pertinent for the purpose, and for the reasons above set forth this is not sufficient to establish said ownership; but he has not alleged prescription as a means of acquiring the same, and therefore he cannot invoke in support of his right articles 2 and 3 of the Regulations for the adjustment of waste lands in this Island, approved by Royal Decree of April 27, 1884, nor Royal Order of August 20, 1888, amending article 3 of said Regulations; but even in the supposition that he had in due time alleged prescription, this should be overruled inasmuch as the plaintiff has failed to show, as he was called upon to do, an uninterrupted possession of the lands in question for more than thirty years.

According to articles 348 and 430 of the old Civil Code,

which are sections 354 and 433 of the one in force, the owner has a right of action against the holder and the possessor of the thing to recover the same, while natural possession is the holding of a thing or the enjoyment of a right by a person, and civil possession the same holding or enjoyment, together with the intention of acquiring ownership of the thing or right; and, therefore, The People of Porto Rico not being the possessor of the lands the ownership whereof is at issue herein, the action to recover possession could not be exercised against it, but should have been directed against those who had possession and enjoyed said lands and still possess and enjoy them alleging rights of ownership over them, as is to be gathered from the deed of sale executed July 5, 1900, in favor of Virgilio Acevedo, and from the fact that said possessors appear to-day upon the assessment-roll pursuant to an order of the Treasurer of Porto Rico, dated September 4, 1900; while the record of possession entered at the Registry of Property of Aguadilla in favor of The People of Porto Rico is not sufficient to invest the latter with the character of possessor, which it had not, for such a record cannot convert into real and true a fact which is not so.

The certificate issued by the Treasurer of Porto Rico on September 14, 1900, for the purpose of entering at the Registry of Property of Aguadilla, in favor of The People of Porto Rico, the record of possession of the lands sold by public instrument of July 5, of aforesaid year, to Virgilio Acevedo y Hernández, did not fulfill the requisites prescribed by article 36 of the Regulations for the execution of the Mortgage Law, nor could it do so, inasmuch as the most essential of these requisites, namely, the possession of the lands in question, was lacking in the present case, for the simple and manifest reason that The People of Porto Rico did not possess said lands, and therefore the record of possession made in aforesaid registry of property was null and void.

According to section 1 of the Act of the Legislative Assem-

bly Establishing the Supreme Court of Porto Rico as a Court of Appeals, approved March 12, 1903, this court in its deliberations and decisions shall not be confined to the errors in procedure or of law only, as they are pointed out, alleged, or saved by the respective parties to the suit, or as set forth in their briefs and exceptions; but in furtherance of justice it may also take cognizance of all the facts and proceedings in the case as they appear in the record and likewise consider the merits thereof, so as to promote justice and right and to prevent injustice and delay.

In view of the reasons above set forth, of the legal texts already cited, and judgments of the Supreme Court of Spain, of April 10, 1872, December 4, 1888, and October 5, 1892—the first in an action to recover an estate and payment of dues, the second in a suit for the annulment of a survey and recovery of lands, and the third in an action to recover possession—as also the judgment of this Supreme Court rendered October 24, 1900, the undersigned justices are of opinion that the exception of want of legal capacity on the part of the plaintiff, pleaded by the defendant, should be overruled; that the complaint, so far as a declaration of ownership of the lands referred to therein is sought in behalf of Pierre Enmanuel Baron de Laurens d'Oiselay, be dismissed and that it be sustained as to the cancellation of the record of possession of said lands entered at the Registry of Property of Aguadilla in the name of The People of Porto Rico, both plaintiff and defendant being left at liberty to assert their respective rights in due form and manner, and against the proper party, as to the title of ownership claimed by them over aforesaid lands; the costs of the trial and of the appeal to be understood as without special imposition.